## LEWIS *v.* STATE.

(Division A.   Oct. 31, 1938.)

[184 So. 53.   No. 33262.]

**E. C. Barlow**, of Brookhaven, for appellant.

**W. D. Conn, Jr.,** Assistant Attorney-General, for the State.

200

Argued orally by **E. C. Barlow**, for appellant.

**Smith, C. J.**, delivered the opinion of the court.

This is an appeal from a conviction for rape. The female alleged to have been raped was only eight years of age, and while it does not appear that the rape was accomplished by force or violence or against the will of the child, that fact is immaterial, she being under the age of consent. Section 1122, Code of 1930. The appellant's defense was an alibi.

Among the appellant's complaints are: (1) The court erred in not granting his request for a directed verdict; (2) the evidence is insufficient to support the verdict; and (3) the court erred in admitting certain evidence for the State hereinafter to be set forth.

The first two assignments of error rest on the claim that the testimony of this eight year old child was wholly unworthy of belief, and is based on the fact that her testimony contains some contradictions, and on the further claim that it indicates that she was not testifying to the actual facts but was simply repeating what she had been told to say by her father and others on the evidence, which will not be set forth. The court below committed no error in refusing to direct a verdict for the appellant, and it will not be necessary for us to decide whether the evidence of this child is of such an unsatisfactory character as to require the setting aside of the verdict and the submission of the case to another jury, for the reason that a new trial will have to be granted because of the erroneous admission of evidence.

It will not be necessary for us to decide whether evidence of this character is inadmissible unless the prosecutrix herself testifies, and any error, if such there be, in introducing this evidence before she testified, was cured by the fact that she did thereafter testify.

This child lives with her father and mother in a rural community, their home being immediately across a public road from the residence of the appellant. On the 29th day of January, 1938, the child's father and mother left her alone at home for the whole of the day, and according to her testimony, the appellant, sometime during the day, came to her home, suggested that she go with him to some woods near-by in order to play with him. This, she did, and while there he had intercourse with her. Before she testified, her father was introduced and stated that he came home about 4:30 in the afternoon, and shortly thereafter the child reported the rape to him. He was not, however, allowed to disclose the name of the alleged rapist. This evidence was objected to on two grounds: (1) It was prematurely offered, the child not then having testified; and (2) that a preliminary examination of the witness, out of the presence of the jury, disclosed that this statement by the child was not voluntarily made but was coerced by means of a threatened whipping, and in answer to questions propounded to her by the witness.

The competency of this child as a witness was challenged on the ground that she did not possess the necessary qualifications therefor. She was fully examined as to her qualifications, and the court below was justified therefrom in holding that she was a competent witness.

A complaint made by a female after she claims to have been raped is admissible in evidence for two reasons: (1) to corroborate her evidence that she had not consented thereto; and (2) to sustain her against the charge of recent fabrication of her story. There was no reason to admit it here in order to corroborate a denial of consent, for the child was without legal capacity to give her consent. It was admissible, however, for the second reason. Such a complaint must be voluntarily made to be admissible in evidence. In some jurisdictions, a complaint obtained by means of questions propounded to

the female is inadmissible, but in other jurisdiction, the rule, in which we concur, is that whether the complaint is admissible when obtained by means of questions depends on the relations between the female and the person asking the questions, the circumstances under which they are asked, and their character. 52 C. J. 1065. This rule, with its limitations, is clearly set forth in the following excerpt from Rex v. Osborne, a case of indecent assault, decided in 1905, and reported in 1 K. B. 551, 2 Ann. Cas. 830: "It appeared that Keziah Parkes, along with a younger sister and another girl named Mary Moule, of a similar age, went to a shop kept by the prisoner for the purpose of buying chips. Two of the girls —namely, Moule and the younger sister—went out of the shop on an errand, and during their absence the alleged assault was committed by him on Keziah. She then left the shop, and on her way home met Mary Moule with her sister coming back to the shop. Mary Moule was called at the trial, and was asked when she met Keziah Parkes in the street, 'Did you speak to her?' Moule replied 'Yes; I asked her why she did not stop for me.' The next question put to the witness was, 'What did she say?' Objection was taken for the prisoner that the witness's answer was not admissible in evidence, but the chairman admitted the evidence. The girl's answer was as follows: 'Because she did not like the prisoner and would not go near him again, as he unbuttoned her drawers. That was all she said.' The prisoner was convicted, and the point raised for our decision is whether this ruling was right. It was contended for the prisoner that the evidence was inadmissible—first, because the answer made by the girl was not a complaint, but a statement or conversation, having been made in answer to a question; and, secondly, because Keziah Parkes was under the age of thirteen, her consent was not material to the charge. As to the first point, the case of Reg. v. Merry, 19 Cox C. C. 442, was quoted. In that case a question had been put to a girl of nine years old by her moth-

er in a case of indecent assault, and the learned judge ruled that, as the proposed evidence was a statement made in answer to a question, it was a conversation and not a complaint, and he declined to allow it to be given in evidence. It does not appear, however, from the report what the question was that was put to the girl. It appears to us that the mere fact that the statement is made in answer to a question in such cases is not of itself sufficient to make it inadmissible as a complaint. Questions of a suggestive or leading character will, indeed, have that effect, and will render it inadmissible; but a question such as this, put by the mother or other person, 'What is the matter?' or 'Why are you crying?' will not do so. These are natural questions which a person in charge will be likely to put; on the other hand, if she were asked, 'Did So-and-so' (naming the prisoner) 'assault you?' 'Did he do this and that to you?' then the result would be different, and the statement ought to be rejected."

In State v. Ellison, 19 N. M. 428, 144 P. 10, a child that had been raped in a room of a hotel immediately thereafter ran to a room occupied by herself and a sister and locked the door. In response to a question from her sister as to why she locked the door, she told her what had occurred. The evidence of this complaint was held admissible.

What occurred when the child told her father of the alleged rape was this: After her father returned home on the day of the alleged rape, he asked the child if anyone had been there that day, to which she replied: "Mr. Jack (the appellant) come." What thereafter occurred can best be stated in the witness's own language: "A. So, I went ahead with my work and never thought of anything and after a while, she said, 'Papa, reckon what Mr. Jack toted that box of salve in his pocket for?' I didn't think anything about it. I said, 'I don't know, Hun, I reckon he had a sore hand and put it in his pocket' and I reckon in 30 minutes, she ask me again, said,

'Papa what does Mr. Jack carry that salve around in his pocket for?' I said, 'I don't know, Hun, what makes you ask me about the salve, how do you know he has any salve?' She said, 'he showed it to me.' I said, 'how come him showing you the salve?' She said, 'well, he took me down in the wood to play' and that set me on fire. I begin to think. I said, 'what kind of playing an old man like that, what kind of playing you call yourself doing?' She said, 'he said not to tell it.' I says, 'I want you to tell me what it was.' I says, 'what kind of playing?' It embarrassed her or something, looked like, so I says, 'come on and tell me.' I said, 'if you don't tell me what kind of playing you was doing, I am going to whip you' and it looked like it scared her and I said, 'no, Hun, I won't whip my baby.' I said, 'come on and tell me what kind of playing you done and how come him to show you the salve and—' Tell it like it is?

"Q. Tell it all. A. And she said, 'he took me by the hand at the mail box and led me down in the woods' and I says, 'well, what was you doing down there?'' She told me that he set down and took her in his lap and put some slave on his fingers and stuck them in her down here (indicating) I said, 'did it hurt?' She said, 'Yes, sir.' I said, 'what was it, tell me 'the rest.' She said 'he told me not to tell it.' I said, 'come on and tell me, I want to know everything he done and said.' She didn't know what to do or say, or else she didn't tell me. *I said, 'did he stick anything else in you?' and she said, 'yes, sir.'* I said, 'what was it?' That made the third time, she said he told her not to tell. I said, 'come on and tell me, there isn't nobody here but me, tell it.' *I said, 'did he stick something in you down here on him?' She said, 'Yes, sir.'* I ask her, 'did it hurt?' and she said, 'no, sir, it didn't go no more than that (indicating) deep.' ''

It will not be necessary for us to determine whether the evidence of this witness was inadmissible solely for

the reason that he obtained the information as to the alleged rape by threatening to whip this child, for when that threat was followed by the cross-examination of the child, which went beyond what was permissible, even though the appellant had requested the child not to tell what had occurred, the voluntary character of her complaint was destroyed. The evidence therefore should not have been admitted. The witness, of course, had the right to obtain this information from his daughter, and when his suspicions were aroused as to what had occurred, it became his duty to ascertain from her in any reasonable manner what had in fact occurred. We are not here concerned with that, but only with whether the method he pursued to obtain the information destroyed its voluntary character within the rule governing its admissibility in evidence.

This witness, the child's father, and Oscar McGehee, testified, over the appellant's objection, that they, accompanied by the child, went into the near-by woods, and (it is clear from their testimony) she pointed out to them the place where she claimed the alleged rape occurred. They examined the ground at this place, and testified to things they there saw, which, if true, indicated that something like what the child said had occurred there. There was no evidence that either of these witnesses knew of their own knowledge that the place they examined was the place of the alleged rape, nor was there any other evidence identifying the place as such. This evidence was inadmissible for two reasons: (1) The place was pointed out to the witnesses by the child, which, in effect, was a statement by her to them of the details of the alleged rape, and such evidence, under all the authorities, is inadmissible; Frost v. State, 100 Miss. 796, 57 So. 221; and (2) the place examined by them was not shown by the testimony of the child or by any other witness to have been the place where the alleged rape occurred. Cumberland v. State, 110 Miss. 521, 70 So. 695; Huddleston v. State, 134 Miss. 382, 98 So. 839.

It will not be necessary for us to consider the other assignments of error, for the matters therein complained of are of such character as are not likely to occur again, and the others present no reversible error, if error at all.

Reversed and remanded.