STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
GEORGE W. BALLES, JR., DEFENDANT-APPELLANT.

Argued April 5, 1966—Decided May 23, 1966.

*Mr. Martin L. Haines* argued the cause for appellant (*Messrs. Dimon, Haines & Bunting,* attorneys).

*Mr. Maurice Denbo,* Assistant Prosecutor, argued the cause for respondent (*Mr. Martin J. Queenan,* Prosecutor of Burlington County, attorney).

The opinion of the court was delivered by

JACOBS, J. The Appellate Division, with one judge dissenting, affirmed the defendant's conviction of acts tending to impair the morals of a nine-year-old girl in violation of *N. J. S.* 2A:96–3. The defendant appealed to this Court as of right under *R. R.* 1:2–1(b).

The defendant was engaged in business as a private tutor in remedial reading with an office in a small building in the rear of his home in, Mount Holly. After seeing a newspaper advertisement that the defendant tested children in reading without charge, Mrs. Charlotte Berg made an appointment for the testing of her three children, Dynell, Rhonda and Daniel. This was done in October 1962 and as a result Dynell began a remedial reading course with the defendant.

According to the State's testimony, Dynell continued until January 1963 when she was withdrawn and replaced by her sister Rhonda who continued with remedial reading lessons until February 10, 1963. On that date, her stepfather Marvin Berg took Rhonda to the defendant's office for her lesson at about noon, went off to do some shopping and returned for her at about 1 P. M. She was waiting at the window and when she saw his car she came out "visibly shaken." Mr. Berg testified that Rhonda was "on the verge of tears" and when he asked her what was wrong, she at first refused to answer and then said, 'I don't want to talk about it now." When they arrived home between 1 P. M. and 1:30 P. M., Rhonda talked first with Dynell and then with her mother.

Mrs. Berg testified that shortly before 1 P. M. on February 10th she was at home and received a telephone call from Rhonda who was still at the defendant's office. Rhonda sounded "very, very upset" and Mrs. Berg told her that, if her daddy did not pick her up within the next few minutes, she would come for her. Mrs. Berg also testified that she then

spoke for a moment directly to the defendant. When Rhonda arrived home shortly thereafter, Mrs. Berg spoke to her and Dynell. According to Mrs. Berg's testimony, Rhonda told her that the defendant "had put his hands down her panties and had touched here."

Rhonda herself testified during the trial that on the day in question the defendant "put his hand down my blouse" and pinched me "all over my chest." She also testified that when her father was late in picking her up she called her mother and that the defendant took the phone and spoke directly to her mother. Rhonda gave testimony as to other occurrences on unspecified dates and stated at one point that the defendant "used to put his hand in my blouse and put it down my pants." The trial court admitted this testimony "only for the purpose of lending credence to the testimony of the complaining witness, Rhonda Berg, as to the occurrence of an offense on February 10, 1963." He later instructed the jury that the State's obligation was to establish, beyond reasonable doubt, its charge of an improper act specifically on February 10th (but *cf. State v. Johnson*, 20 *N. J. Super.* 93 (*App. Div.* 1952)) and that the evidence with respect to other dates was received not as proof of the offense charged "but merely as tending to show the inclination and disposition of this defendant towards this child and thus to lend credence to her testimony as to the occurrence of the incident on February 10, 1963." *Cf. McCormick, Evidence* 328–33 (1954).

After the Bergs heard Rhonda's story, they discussed the matter with a neighbor, described as a former Mayor and a nonpracticing attorney, and as a result of this conversation Mr. Berg called the Prosecutor of Burlington County and went to his home. While at the Prosecutor's home on February 10th he talked with Chief of County Detectives McConnell, as well as with the Prosecutor. Chief McConnell testified that after talking with Mr. Berg he interviewed Mrs. Berg and her daughters Rhonda and Dynell and then placed the defendant's home under "a partial surveillance." On March

8, 1963, Chief McConnell signed a complaint against the defendant and thereafter an indictment was returned. The indictment contained two counts, the first charging the defendant with acts tending to impair the morals of Rhonda Berg, then nine years old, and the second charging the defendant with acts tending to impair the morals of Dynell Berg, then eight years old. The second count was dismissed during the trial and the case went to the jury solely on the count relating to Rhonda.

The defendant testified that he never engaged in any of the acts complained about. He asserted that Rhonda was not at his office at all on February 10th, and he introduced testimony by his wife and daughters and by two of his pupils, Mr. Olsen and Mr. Crook, in support of that assertion. He denied that he had ever accepted Rhonda as a pupil but admitted that he had tested her during January 1963. He stated that he never saw Rhonda after January 28, 1963, and that the only instruction he had scheduled for February 10th was Mr. Olsen at 11 A. M. and Mr. Crook at noon and that each of them appeared as scheduled and received instruction during the full scheduled hour. In the course of its attack on his credibility, the State established, under the present authority of *N. J. S.* 2A:81-12, that the defendant had been convicted of a prior crime; in fairness to the defendant it withheld from the jury the nature and severity of the prior offense and the sentence imposed. See *State v. Garvin,* 44 *N. J.* 268, 280-281 (1965) ; *cf. Report of the New Jersey Supreme Court Committee on Evidence* 66-68 (1963).

After all the testimony on behalf of the defendant as well as the State was completed, the trial court charged the jury and submitted the case to it for its determination. The jury returned a verdict of guilty and thereafter a motion for new trial was denied. The trial judge ordered that the defendant be committed to the New Jersey State Hospital at Ancora for an indeterminate period but suspended the commitment and placed the defendant on probation for five years. In support of his appeal the defendant sets forth

various points in his brief which will be dealt with in the order of their presentation.

In his first point he urges that the jury's verdict was against the weight of the evidence. Though the testimony was conflicting, the State's evidence was clearly sufficient to establish beyond reasonable doubt that on February 10th the defendant committed acts tending to impair the morals of Rhonda in violation of *N. J. S.* 2A:96–3. In *State v. Garcia,* 83 *N. J. Super.* 345 (*App. Div.* 1964), the court pointed out that in New Jersey a conviction for a morals offense "may be sustained on the uncorroborated testimony of the victim." 83 *N. J. Super.,* at *pp.* 349–350. Here, Rhonda's testimony establishing the offense received some support from her behavior while telephoning, as testified to by her mother, and from her appearance and behavior upon leaving the defendant's office, as testified to by her stepfather. The defendant's own denial of misconduct left the issue squarely before the jury for determination. The evidence given by his supporting witnesses all centered on Rhonda's alleged total absence from his office on February 10th but this was met directly by the testimony of the Bergs and Chief McConnell and the jury was of course at liberty to accept their testimony.

*R. R.* 1:5–1(a) provides that a jury verdict shall not be set aside as against the weight of the evidence "unless it clearly and convincingly appears that the verdict was the result of mistake, partiality, prejudice or passion." In *State v. Smith,* 32 *N. J.* 501 (1960), *certiorari* denied 364 *U. S.* 936, 81 *S. Ct.* 383, 5 *L. Ed.* 2d 367 (1961), this Court, citing *R. R.* 1:5–1(a), pointed out that the appellate court's function is not to reweigh the evidence for independent determination but "is limited to correcting injustice where there is an inescapable conclusion of obvious error by the jury." 32 *N. J.,* at *pp.* 523–524. See also *State v. Landeros,* 20 *N. J.* 76 (1955), *certiorari* denied 351 *U. S.* 966, 76 *S. Ct.* 1025, 100 *L. Ed.* 1486 (1956); *State v. Williams,* 39 *N. J.* 471, 490, *certiorari* denied 374 *U. S.* 855, 83 *S. Ct.* 1924, 10

*L. Ed.* 2*d* 1075 (1963). On the record before us we cannot say that this test has been met.

The second point in the defendant's brief asserts error in the admission of Mrs. Berg's testimony as to her daughter's complaint on February 10th. This testimony was admitted under the so-called "fresh complaint" rule which is dealt with extensively in 4 *Wigmore, Evidence* § 1134 *et seq.* (3*d ed.* 1940) and in the cases. See *State v. Gambutti,* 36 *N. J. Super.* 219 (*App. Div.* 1955); *State v. Orlando,* 119 *N. J. L.* 175 (*Sup. Ct.* 1937); *State v. Huggins,* 83 *N. J. L.* 43 (*Sup. Ct.* 1912), affirmed 84 *N. J. L.* 254 (*E. & A.* 1913); see also *People v. Burton,* 55 *Cal.* 2*d* 328, 11 *Cal. Rptr.* 65, 359 *P.* 2*d* 433 (1961); *People v. Davis,* 10 *Ill.* 2*d* 430, 140 *N. E.* 2*d* 675, *certiorari* denied 355 *U. S.* 820, 78 *S. Ct.* 25, 2 *L. Ed.* 2*d* 35 (1957); *People v. Bonneau,* 323 *Mich.* 237, 35 *N. W.* 2*d* 161 (1948); *State v. Smith,* 3 *Wash.* 2*d* 543, 101 *P.* 2*d* 298 (1940). The rule is applied widely in rape and morals cases and permits proof that the violated victim complained within a reasonable time to someone she would ordinarily turn to for sympathy, protection and advice. See *State v. Gambutti, supra,* 36 *N. J. Super.,* at *p.* 225.

Wigmore sets forth three principles under which the proof may be offered. He describes the first as an explanation of a "self-contradiction" which would result from the absence of a complaint. He points out that if no testimony were offered with respect to the complaint the jury might naturally assume that none was made and that it is only just that the prosecution be permitted to forestall this natural assumption by showing that a complaint was in fact made. Under this principle the complaint but not its details is admissible and impeachment of the witness is not material. *Wigmore, supra* § 1136. The second permits the rehabilitation of the witness after she has been impeached, by showing that she made statements shortly after the incident consistent with her testimony; under this principle the details of the complaint are admissible. *Wigmore, supra* § 1138. The third admits the complaint under *res gestae* where that doctrine's require-

ment of spontaneity is met; here the details are admissible and impeachment is not material. *Wigmore, supra* § 1139.

In *People v. Burton, supra,* the Supreme Court of California, in dealing with Wigmore's first principle, pointed out that testimony as to a complaint having been made is meaningless if the subject is not specified and immaterial if it does not relate to the alleged offense; it therefore held that even where details may not properly be recounted the prosecution must be permitted to show "that the complaint related to the matter being inquired into, and not a complaint wholly foreign to the subject"; in other words, "the alleged victim's statement of the nature of the offense and the identity of the asserted offender, without details, is proper." 11 *Cal. Rptr.,* at *p.* 76, 359 *P. 2d,* at *p.* 444. In *State v. Gambutti, supra,* our Appellate Division approved a similar commonsensible approach; it noted that where details of the complaint are inadmissible "enough may be given in evidence to show the nature of the complaint, even though it involves to some extent the particulars thereof." 36 *N. J. Super.,* at *p.* 228.

We consider that Mrs. Berg's testimony as to Rhonda's complaint did not constitute the improper recounting of details. In response to an inquiry as to what Rhonda told her she answered "she said Mr. Balles had put his hands down her panties and had touched here." She did not elaborate and could hardly have said less and still identified the nature of Rhonda's complaint. In *State v. Bragg,* 141 *Me.* 157, 40 *A. 2d* 1 (1944), the victim's father and mother were permitted to testify that she had complained to them that she had been "carnally abused" that forenoon. In holding that this did not constitute the improper expression of details, the court stated that it merely showed the nature of the complaints and that it would have been unintelligible to have recited without more that "complaints were made." See also *State v. Goebel,* 40 *Wash. 2d* 18, 240 *P. 2d* 251, 255 (1952), where the complaint was that the victim had been "choked and raped", *State v. Sharpe,* 239 *S. C.* 258, 122 *S. E. 2d* 622,

629 (1961), where the complaint was that "a colored fellow had tried to rape her", and *State v. Toth,* 214 *Minn.* 147, 7 *N. W. 2d* 322, 324 (1943), where the victim's mother testified that "she said that she was attacked that night, what happened to her from Ernie Toth." *Cf. State v. Gambutti, supra,* 36 *N. J. Super.,* at p. 229; *State v. Huggins, supra,* 83 *N. J. L.,* at p. 46; see also *People v. Cordray,* 221 *Cal. App. 2d* 589, 34 *Cal. Rptr.* 588 (1963).

■ The defendant voices objection to the prosecutor's departure from customary practice in placing Mrs. Berg on the witness stand before Rhonda. But Rhonda did in fact testify and if her mother's testimony had followed rather than preceded Rhonda's, no question could be raised as to its propriety. See *State v. Gambutti, supra,* 36 *N. J. Super.* 219. The record and the briefs do not point to any prejudice and we are satisfied that none resulted to the defendant from the order of proof. See *State v. Holm,* 67 *Wyo.* 360, 224 *P. 2d* 500 (1950):

"Complaint is also made that the mother of the prosecutrix was permitted to testify concerning the complaint of the latter before the prosecutrix herself had testified. It is true that the order of testimony was improper for the testimony of the mother would have been incompetent and immaterial if the prosecutrix herself had not testified. State v. Mau, supra. Thus it is said by IV Wigmore on Evidence (3rd Ed.) Sec. 1136, page 226 as follows: 'Since the only object of the evidence is to repel the supposed inconsistency between the woman's present testimony and her former silence, it is obvious that if she has not testified at all, there is no inconsistency to repel, and therefore the evidence is irrelevant.' In this case, however, the prosecutrix testified and so the order of introduction of evidence cannot be held to be prejudicial herein." 224 *P. 2d,* at p. 503.

In *State v. Hills,* 241 *La.* 345, 129 *So. 2d* 12 (1960) (reversed on rehearing on unrelated grounds in 241 *La.* 394, 129 *So. 2d* 30 (1960)), the victim's complaint to her landlord was admitted under the third principle expressed by *Wigmore;* in dealing with an objection based on the fact that the landlord was permitted to testify before the victim, the court noted that there was no prejudice and that, in any event, "the defendant cannot regulate the state in its order

of proof." 129 *So. 2d*, at *p.* 22; see *State v. Cooper*, 10 *N. J.* 532, 564 (1952); *State v. Manno*, 29 *N. J. Super.* 411, 418 (*App. Div.* 1954); *cf. Lewis v. State*, 183 *Miss.* 192, 184 *So.* 53, 54 (1938).

■ In his third point the defendant asserts that the trial court's charge to the jury on the question of "fresh complaint" was erroneous. The trial court told the jury that the testimony as to Rhonda's complaint to her mother was admitted not as corroboration "but for the purpose only of meeting in advance a self-contradiction in her conduct." This language is taken from Wigmore's discussion of his first principle and has been adopted by our cases. See *State v. Gambutti, supra*, 36 *N. J. Super.*, at 226; *State v. Hintenberger*, 41 *N. J. Super.* 597, 603 (*App. Div.*), certif. denied 23 *N. J.* 57 (1956). It presented no error and involved no harm to the defendant.

■ The trial court also told the jury that if it found that the complaint was not made "within reasonable time after the commission of the alleged offense" it could consider that fact in determining the value and weight to be given to the testimony. The defendant urges that it was for the court rather than the jury to determine whether a reasonable time had elapsed but we find no substance to this contention. See *Wigmore, supra* § 1135, at *pp.* 221–222; *cf. State v. Schaeffer*, 87 *N. J. L.* 663, 667 (*E. & A.* 1915).

■ The defendant points out that the trial court failed to make any comment in its charge with regard to Mrs. Berg's testimony as to the complaint from Dynell. No request for such comment was made nor was there any pertinent objection to the charge as given. Although the indictment included a count relating to Dynell, that count was dismissed in regular course during the trial. At the time of the dismissal the court explicitly told the jury that the "count of the indictment with respect to Dynell Berg is dismissed and is being withdrawn from your consideration, so that the only count of the indictment which you will be considering is the charge with respect to the offense, with

respect to Rhonda Berg who has previously, as you know, testified." No request was made then or thereafter for further cautionary instructions or for formal striking of the testimony relating to Dynell or for other relief. At the close of all of the testimony, the trial court reasserted in its charge that the count relating to Dynell had been dismissed and withdrawn from the jury's consideration and when it sent a copy of the indictment to the jury room it took the precaution of physically removing the count relating to Dynell so that there would be no confusion in the minds of the jurors. This was done with the consent of counsel for the defense as well as the prosecution. In the light of all the circumstances, it is clear to us that there was neither error nor prejudice.

The defendant's fourth point relates to a statement made to the jury with respect to the preliminary hearing. During the trial, defense counsel had questioned some of the State's witnesses as to their testimony at the preliminary hearing, and when the defendant was on the stand his counsel inquired as to who had testified during that hearing. The defendant said that the Bergs and no one else had testified. On cross-examination counsel for the prosecution asked him as to who, other than the Bergs, had testified at the hearing. He answered that "no one else" had testified and when asked whether he had testified, his answer was in the negative. At this point counsel for the defense stated that the last question was "probably improper" and "should be explained to the jury." The trial court then instructed the jury that in preliminary hearings the only task of the municipal court is to determine probable cause, that "customarily, the witnesses heard by the magistrate are only witnesses for the state" and that while the defendant "has a right to be heard before the magistrate," he "is not obliged to be heard or no prejudice results to him from the fact that he did not testify."

No objection to this instruction was made nor was there any request for further instruction. The defendant

now urges, however, that the instruction was unsound and should be viewed as plain error within *R. R.* 1:5–1(a). We fail to find any such error within the rule. See *State v. Hale,* 45 *N. J.* 255, 264–265 (1965); *State v. Garvin, supra,* 44 *N. J.,* at *pp.* 280–281. It is true that *R. R.* 3:2–3 refers to the right of the defendant to make an unsworn rather than a sworn statement at the preliminary hearing and that the trial court did not mention that distinction. But considering the full context of its instruction we fail to see how the jury could have been misled as to the true nature of the preliminary hearing or how the defendant could be said to have been prejudiced or to have suffered any "manifest wrong or injury." *R. R.* 1:5–1(a).

▇▇▇▇▇ Under his fifth point the defendant contends that the trial court erred in permitting the State to introduce certain testimony by way of rebuttal. The defendant had testified as to specific dates when he saw the Berg girls and had denied seeing Rhonda after January 28th. In rebuttal, Mrs. Berg produced an appointment book which contained pertinent entries conflicting with the defendant's testimony. She testified that she had been unable to locate the book earlier. Another witness testified that on a particular date she had, at Mrs. Berg's request, driven one of the Berg children to the defendant's office. In *State v. DeRocco,* 53 *N. J. Super.* 316 (*App. Div.* 1959), the court cited the settled rule in our State that "the question of what is proper rebuttal evidence, and whether it should be admitted, lies within the trial court's discretion, and the exercise of that discretion will not be disturbed in the absence of gross abuse." 53 *N. J. Super.,* at *p.* 323. We believe that the testimony here may fairly be viewed as proper rebuttal and, in any event, find no basis for concluding that the trial court's action in admitting it exceeded its broad discretionary powers. See *State v. Gleitsmann,* 62 *N. J. Super.* 15, 28 (*App. Div.*), certif. denied 33 *N. J.* 386 (1960).

▇▇▇ The defendant's sixth point asserts that the "refusal to permit the use of the complaint in the magistrate's court

on cross-examination or otherwise was improper." During his cross-examination, Chief McConnell testified that the complaint he had filed was for contributing to delinquency (*N. J. S.* 2A:96-4). Later, when the defendant was on the stand, his counsel sought to ask him whether the complaint filed was under *N. J. S.* 2A:96-4 but there was an objection which the trial court sustained. No harm would have been done by admitting the answer but no harm was done by its exclusion. The defendant points to an alleged discrepancy between the charge in the complaint and that in the indictment but he never offered the complaint in evidence. Examination of a copy discloses that it charged a violation of *N. J. S.* 2A:96-4 in that the defendant had molested Rhonda Berg by placing his hands into her clothing and touching her private parts. We find no meaningful difference between the complaint and the indictment and although the complaint inadvertently referred to *N. J. S.* 2A:96-4, rather than *N. J. S.* 2A:96-3, this inadvertence was not prejudicial to the defendant and is not material here. The trial was, of course, not on the complaint but on the indictment prepared by the County Prosecutor pursuant to action of the Grand Jury.

The defendant's seventh and final point is that "The court should have refreshed the recollection of the jury in response to its question asked after its initial retirement." After the trial court had charged the jury and submitted the case to it for its determination, the jury retired, deliberated for a time, and then submitted the following question: "Did Mr. Balles acknowledge that he did take the phone from Rhonda and reassure the mother that he would keep the child there until the father picked her up on February 10, 1963?" At this point the trial court conferred in chambers with counsel for the defense and prosecution and then told the members of the jury that they were "the sole and exclusive judges of the facts," that their recollection must govern, and that "the court does not feel that it should attempt to substitute its

recollection for yours by answering this fact question at this time."

There was no objection by defense counsel to this action nor was there any request, either by the jury or by defense counsel, for a reading of any portion of the testimony. While despite all this, the trial court might well have exercised its discretion towards answering the question (*cf. State v. Wolf*, 44 *N. J.* 176, 184–186 (1965)), we find no plain error in its action or any manifest injustice to the defendant. The jury could hardly have gone astray as to the basic and controlling issue before it. The case involved no complex factual or legal matters and turned entirely on credibility. The jury obviously believed Rhonda's testimony that she had been molested and disbelieved the defendant's denial, and the record contains adequate testimonial support for the resultant finding of guilt. The defendant had a fair trial and we are satisfied that none of the alleged legal errors advanced on his behalf affected his substantial rights or call for reversal of his conviction. *R. R.* 1:5–1.

Affirmed.

*For affirmance*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.