STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. J.S., DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted December 8, 1987—Decided January 15, 1988.

Before Judges ANTELL, DEIGHAN and COHEN.

*Alfred A. Slocum,* Public Defender, attorney for appellant (*Michael A. Barcham,* designated counsel and on the brief).

*W. Cary Edwards,* Attorney General of New Jersey, attorney for respondent (*Robert E. Bonpietro,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

ANTELL, P.J.A.D.

Defendant was charged in the first count of an indictment with aggravated sexual assault, *N.J.S.A.* 2C:14–2a(1), and in the second count with sexual assault, *N.J.S.A.* 2C:14–2b. The more serious crime charged in the first count was allegedly committed by the digital penetration of the victim's vagina, she then being less than 13 years of age. The second count charged that the lesser offense of sexual assault was accomplished by "intentionally touching the intimate parts, *i.e.,* breast and inner thigh" of the victim. Defendant's motion to dismiss the first count for lack of proof of penetration was granted at the end of the State's case. Also addressed by defendant's motion to dismiss was the second count of the indictment which was not supported by any proof that defendant had touched the breast and inner thigh of the victim. Rather than dismiss that count the trial judge struck therefrom the allegation that there had

been a touching of the victim's breast and thigh and substituted therefore an allegation, which conformed to the evidence, that there had been a touching of the victim's vagina.

On this appeal defendant asserts the trial court committed reversible error in receiving into evidence certain testimony under the "fresh complaint" rule and by amending the second count of the indictment in the manner described.

On April 20, 1984 defendant's daughters, C. and L., respectively aged 11 and 7 years old, came to his home for an overnight visitation at the request of their mother, Mrs. M., from whom defendant had been divorced for approximately eight years. The crux of the prosecution was that when the girls were in bed defendant explored with his hands the private areas of C.'s person. A day or two later C. related the incident to her close friend, 10 year old S., who repeated it to her mother, Mrs. S. Mrs. S. thereupon questioned C. and then reported to C.'s mother, Mrs. M., what she had learned. Mrs. M. discussed the matter with her daughter on May 2, 1984.

During presentation of the State's case S. was permitted to testify that C. had told her of the incident in which defendant touched her vagina. Mrs. S. was permitted to testify that after conversing briefly with S., her daughter, she questioned C. who told her that defendant had "inserted his finger inside of her." Mrs. M. was permitted to testify that C. told her on May 2, some 12 days after the event, of the overnight visit at defendant's home during which defendant came in and out of the bedroom "feeling her body, putting his fingers in her vagina."

The foregoing testimony was received under the fresh complaint rule pursuant to which the State is permitted to show in a sexual abuse prosecution that the victim complained of the act within a reasonable time to one to whom she would ordinarily turn for sympathy, protection or advice. *State v. Tirone,* 64 *N.J.* 222, 226–227 (1974); *State v. Balles,* 47 *N.J.* 331, 338–339 (1966), *cert.* den. 388 *U.S.* 461, 87 *S.Ct.* 2120, 18 *L.Ed.*2d 1321 (1967); *State v. Gambutti,* 36 *N.J.Super.* 219, 228–229 (App.

Div.1955); *State v. Saccone*, 7 *N.J.Super.* 263, 266 (App.Div. 1950). The rule has been held applicable in child abuse situations. *N.J. Youth & Family Serv. Div. v. S.S.*, 185 *N.J.Super.* 3, 8 (App.Div.1982). Its rationale and application were explained by the Supreme Court in *State v. Balles*, 47 *N.J.* at 338–339:

> The rule is applied widely in rape and morals cases and permits proof that the violated victim complained within a reasonable time to someone she would ordinarily turn to for sympathy, protection and advice. *See State v. Gambutti, supra*, 36 *N.J.Super.*, at p. 225.
>
> Wigmore sets forth three principles under which the proof may be offered. He describes the first as an explanation of a "self-contradiction" which would result from the absence of a complaint. He points out that if no testimony were offered with respect to the complaint the jury might naturally assume that none was made and that it is only just that the prosecution be permitted to forestall this natural assumption by showing that a complaint was in fact made. Under this principle the complaint but not its details is admissible and impeachment of the witness is not material. *Wigmore, supra*, § 1136. The second permits the rehabilitation of the witness after she has been impeached, by showing that she made statements shortly after the incident consistent with her testimony; under this principle the details of the complaint are admissible. *Wigmore, supra*, § 1138. The third admits the complaint under *res gestae* where that doctrine's requirement of spontaneity is met; here the details are admissible and impeachment is not material *Wigmore, supra*, § 1139.

It is not here suggested that C.'s statement was part of the *res gestae* or that she had been impeached. The fresh complaint theory with which we are here concerned is that which authorizes such testimony to "repel any inference that because the victim did not complain no outrage had in fact transpired." *McCormick, Evidence*, § 297 at 859 (3 ed. 1984). On this basis, only those details of the complaint which are necessary to show the nature of the complaint may be admitted. *State v. Balles*, 47 *N.J.* at 339; *State v. Gambutti*, 36 *N.J.Super.* at 228; *State v. Saccone*, 7 *N.J.Super.* at 266.

We conclude that the substance of what was related by C. to the adult witnesses, C.'s mother and Mrs. S., did not constitute a "complaint." We further conclude that the testimony given by these two witnesses was excessively detailed in relating what was said by C. Under the circumstances present-

ed, the error in receiving the foregoing testimony was clearly capable of producing an unjust result and therefore mandates a reversal of the conviction. *R.* 2:10–2.

As to the testimony of Mrs. S., this witness testified that after a conversation with her ten year old daughter she approached C. and asked "what had happened to her." The child did not volunteer the information. Likewise, C.'s disclosure to her mother, Mrs. M., 12 days after the alleged assault, was the product of questioning by the mother. Indeed, Mrs. M. testified that when she opened the subject with C. "She wouldn't talk. She cried, and she didn't want to talk about it." The methodology of the questioning was explained by Mrs. M. in the following way:

> She wouldn't say hardly anything at all. I had to ask her, you know, about the events, and she would just say yes or no.

In response to the prosecutor's inquiry it was developed that C. furnished "yes" answers to her mother's questions which established that "he had felt her body, and that he had stuck his fingers inside her vagina."

While the methods employed by Mrs. M. to find out what had happened to her daughter were certainly understandable, our concern is whether the child's out-of-court responses satisfy the exacting standards for admissibility under a rule of evidence which permits such testimony only to demonstrate that the victim made a "complaint." Webster defines "complaint" as an "expression of grief, pain or resentment ... something that is the cause or subject of protest or outcry...." [1] In our view, to qualify as a complaint the victim's statement must at least be self-motivated and not extracted by interrogation.

Although in *State v. Kozarski,* 143 *N.J. Super.* 12, 17 (App. Div.1976), certif. den. 71 *N.J.* 532 (1976), we declined to find plain error where the child's "complaint" may have been elicited by his mother, the facts of that case are significantly different.

---

[1] WEBSTER'S NEW COLLEGIATE DICTIONARY 230 (1974).

Here, the challenged testimony was seasonably objected to during the trial. More important, in *Kozarski* we implied that the defendant had not been prejudiced since the evidence showed that the child had spontaneously made the same complaint earlier to a playmate. Here, however, the adults' testimony that C. told them defendant had penetrated her vagina imported highly provocative details which were nowhere supported by competent evidence elsewhere in the record.

In permitting the adult witnesses to testify to the child's statement that defendant had felt her breasts and had penetrated her vagina, the court's ruling exceeded the necessities of the case to the prejudice of defendant. All that was needed was enough to show that the child did not suffer the outrage in silence. Professor Wigmore states it thus:

(1) *Only the fact of the complaint, not the details.* The purpose is to negative the supposed inconsistency of silence by showing that there was not silence. Thus the gist of the evidential circumstances is merely non-silence, *i.e.,* the *fact* of a complaint, but the fact only. That she complained of a rape, or an attempt at rape, is all that principle permits; the further terms of her utterance (except so far as to identify the time and place with that of the one charged) are not only immaterial for the purpose, but practically turn the statement into a hearsay assertion, and as such it is inadmissible (except on the third theory). [4 *Wigmore, Evidence,* (Chadbourn rev. 1972), § 1136 at 307.]

In *State v. Balles,* the Supreme Court approved testimony that the child victim had complained that defendant "had put his hands down her panties and had touched here." *State v. Balles,* 47 *N.J.* at 339. As the opinion stated, the witness "did not elaborate and could hardly have said less and still identified the nature of Rhonda's complaint." *Ibid.* In contrast, the witnesses herein could hardly have said more respecting details which were superfluous to identify the nature of C.'s complaint.

The prejudice to defendant is grievous since C. herself testified only to the "touching" of her vagina and said nothing about penetration, a fact critical to determining whether the crime was an aggravated sexual assault or a lesser sexual assault. Moreover, neither of the children said anything about the touching of C.'s breasts. Although the more serious charge

was dismissed by the court, in considering the lesser offense of sexual assault the jury had before it inflammatory and incompetent testimony of a much graver offense which unquestionably could have influenced its deliberations.

Although the State contends otherwise, we disagree that the court's instructions to the jury in any way diminished the risk of prejudice to the defendant. The court instructed the jury on the subject of fresh complaint several times during the trial and in its final instructions. During the trial, the court repeatedly admonished that

> ... a fresh complaint is admissible not to corroborate details of the incident, but to support the credibility or believability of the witness on the stand in this case to support the credibility or believability of [C.], when she takes the stand.

> &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

> The testimony of her fresh complaint or her complaint is offered for the very limited purpose of supporting her credibility by showing that she did in fact explain to someone else. You're to consider that in conjunction with all the evidence in this case that you hear to determine whether or not you are satisfied that the incident took place, and whether the testimony of [C.] as to the fact that it did take place is credible or believable, and you may consider the complaint she made to her mother and others.

In its final instructions, the court stated the following:

> Generally, crimes involving sex are not perpetrated in public view. They frequently happen in seclusion and in the shadows, and by reason of these circumstances usually the only witnesses are the accuser and the accused. Consequently, the Court is often faced with directly conflicting testimony and so has adopted the rule of permitting the testimony of a fresh complaint to bolster the credibility of the abused female. The reason for allowing such testimony is based upon the nature of the indignity. A person undergoing such an act would be expected to complain to a parent or other person of authority to whom she would probably turn to, to vent and express her feelings because of the insult of her dignity.

> Such evidence though hearsay is permitted, but only for the purpose of supporting the credibility or believability of the victim's complaint, and not as corroboration of the alleged offense.

In no realistic sense do the foregoing instructions protect defendant from the consequences of the jury having heard hearsay testimony of the greater and more debasing crime. Although the language of the final instructions tracks that of the model jury charges, we conclude that it invites misapplica-

tion by a jury of fresh complaint testimony and exacerbates the prejudicial impact of such evidence when it is improperly received.

■ The instructions first explain that sex crimes are not committed in public view; because of this, the charge continues, the court is faced with conflicting testimony and for this reason has adopted the fresh complaint rule to "bolster the credibility of the abused female." But few crimes are committed in the public view, and fewer still do not give rise to conflicting testimony. These facts, however, are unrelated to the fresh complaint rule. As we explained, the purpose of the rule is to allow the State to meet in advance the negative inference which would be drawn from the absence of evidence that the victim reported the incident to one to whom she would naturally turn for comfort and advice. 4 *Wigmore, supra,* § 1135 at 298–300. Thus, the credibility of the witness is protected from unfair attack. But this purpose of the rule was never explained to the jury.

By instructing that fresh complaint testimony is admitted to "bolster" the victim's credibility the trial judge erred. The verb "bolster" means to give "a boost," or "additional strength." *WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY UNABRIDGED* 249 (1969). Thus, the explanation that such testimony may be considered as "supporting" or "bolstering" her credibility to help resolve "directly conflicting testimony" encourages the jury to weigh these proofs as tending to enhance the victim's credibility, as strengthening the evidence of guilt, and not for the rule's correct special purpose. This result is in no way inhibited by frequent adjurations that the evidence is not permitted "as corroboration of the alleged offense." If, indeed, there is an operative distinction between bolstering the credibility of the victim and corroborating the offense we should not expect that it can be grasped by a jury without a considerably more thorough explication thereof by the court.

■ To the extent that *State v. Ramos*, 203 *N.J.Super.* 197, 202–203 (Law Div. 1985), holds that a victim's statement may be considered "as corroboration of the victim's assertion that she was assaulted—a way to bolster her testimony," it is overruled.

■ Since it will be necessary to order a retrial, we summarize for the guidance of the trial court the following principles which should govern receipt of fresh complaint testimony where it is offered, not to rehabilitate the credibility of an impeached victim or as proof of an excited utterance, but to rebut in advance the assumption that the victim failed to report the fact that she had been defiled. First, details of the offense should be confined to those minimally necessary to identify the subject matter of the victim's complaint. Second, the court should specify for the jury in its instructions the particular testimony to which the fresh complaint rule applies. Third, the jury should be informed that the testimony was allowed only to show that within a reasonable time the victim reported the criminal event to one in whom she would naturally confide under the circumstances, not for the truth of the victim's complaint. Fourth, the purpose of the rule should be explained as one which enables the State to meet in advance the internal contradiction which might appear from an apparent failure of the victim to make such a complaint; the explanation should be given in language which does not fail to inform the jurors that its use is confined to neutralizing the inference that might otherwise be drawn that her behavior was inconsistent with a claim of sexual abuse. Reference to the complaint as "supporting" or "bolstering" her credibility should not be made.

■ Defendant also complains that the trial court should have dismissed the second count of the indictment charging sexual assault rather than amend it to substitute "the vagina" in place of "breast and inner thigh" as the intimate parts criminally touched. We disagree.

*N.J.S.A.* 2C:14–2b provides that a sexual assault is committed where there has been an act of sexual contact with a victim

under the age of 13 years and the defendant is at least 4 years older than the victim. "Sexual contact" is defined by *N.J.S.A.* 2C:14–1d as "an intentional touching by the victim or actor, either directly or through clothing, of the victim's or actor's intimate parts for the purpose of degrading or humiliating the victim or sexually arousing or sexually gratifying the actor." A specification of the particular intimate parts touched is not an essential element of the crime, and the amendment did not violate the proscription of *R.* 3:7–4 against charging another or different offense. Moreover, defendant could not have been taken by surprise since the first count of the indictment already alerted him to the fact that he would have to defend against the charge of penetration, an act which necessarily encompasses a touching. The amendment is clearly countenanced by *R.* 3:7–4 as one going only to a description of the crime intended to be charged.

Reversed and remanded for further proceedings not inconsistent herewith.