RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-5529-14T4

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

TALBERT D. HINTON, a/k/a YASIN
R. BRYANT, TALBRET HINTON, TAV
HINTON, HINTON D. TALBERT,

 Defendant-Appellant.
__________________________________

 Submitted June 1, 2017 – Decided September 11, 2017

 Before Judges O'Connor and Whipple.

 On appeal from Superior Court of New Jersey,
 Law Division, Monmouth County, Indictment
 No. 14-01-0098.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Solmaz F. Firoz, Assistant
 Deputy Public Defender, of counsel and on
 the brief).

 Christopher J. Gramiccioni, Monmouth County
 Prosecutor, attorney for respondent (Mary R.
 Juliano, Assistant Prosecutor, of counsel
 and on the brief; Jeffery St. John,
 Assistant Prosecutor, on the brief).

PER CURIAM
 In April 2015, a jury acquitted defendant Talbert D. Hinton

of first-degree aggravated sexual assault, N.J.S.A. 2C:14-

2(a)(1), but convicted him of second-degree sexual assault,

N.J.S.A. 2C:14-2(b), and endangering the welfare of a child,

N.J.S.A. 2C:24-4(a). In the aggregate, he was sentenced to an

eighteen-year extended term of imprisonment, subject to an

eighty-five percent period of parole ineligibility. Defendant

appeals from his convictions and sentence. We affirm.

 I

 The salient evidence was as follows. In December 2012,

then five-year old Lisa1 went to McDonald's with defendant, her

mother's friend. Lisa testified after she finished her meal,

defendant drove her to his grandmother's home. While she sat on

a bed and listened to music, defendant took off his pants but

not his underwear. He then took her leggings down to her knees,

but left her underwear intact.

 Lisa stated defendant then got on top of her, as she lay

face down. She felt his chest touch her back and his stomach

touch her buttocks. She began to cry, because she believed she

would get in trouble with her mother for not returning home as

soon as she finished eating at McDonald's. Defendant then got

1
 The child's name is a pseudonym to protect her privacy.
 2
 A-5529-14T4
off of her and, after she pulled her leggings up, took her home.

Lisa testified the first person she told about the incident was

her teacher, because the child found the teacher trustworthy and

had a good relationship with her.

 During a videotaped interview conducted by a detective of

the Monmouth County Prosecutor's Office, which was viewed by the

jury, Lisa stated while at his grandmother's home, defendant

pulled her pants and underwear down to her knees. As a result,

she started to cry and told him to stop. However, he then

touched her buttocks with his penis and was moving it "back and

up." She described his penis as hard and, at one point,

inserted it "inside [my] butt," which hurt "a little bit." He

then stopped and, after getting her a "rag" to dry her face,

drove her home.

 Lisa's teacher testified that, in June 2013, she sat next

to Lisa on a bus, which was taking Lisa's entire Kindergarten

class on a field trip to a park. Lisa spontaneously said she

had gone to a McDonald's with a "mean and nasty" man, who later

took her to his grandmother's home, where he pulled down her

underwear. The child further stated she started to cry and told

him to stop, so he took her home.

 3
 A-5529-14T4
 After arriving at the park, the teacher approached the

teacher assistant for the Kindergarten class and told her to

talk to Lisa; the teacher could not recall if she informed the

assistant what Lisa had related to her. Finally, the teacher

testified that, after the Christmas vacation in 2012, the child

was "a little withdrawn" and "not as eager to participate."

 The teacher assistant testified she asked Lisa what she had

talked about with the teacher. Lisa reported her mother's

friend took her to McDonald's and then to his home. While

there, he took off his and her clothes, and rubbed his body

against hers. The assistant also testified that after the

Christmas vacation in 2012, the child had an "attitude" and

would get "upset about anything." The teacher and the assistant

reported the child's comments to the school principal, who

contacted the police.

 Lisa was treated by a pediatrician who focuses her practice

on children who allegedly have been abused. The pediatrician

testified the child told her an adult named "Tal" took her to

his grandmother's home and asked her to lie down on her stomach.

He then put his penis on top of her buttocks, which "hurt a

little."

 4
 A-5529-14T4
 Lisa also told the pediatrician she was concerned about

physical abuse between her mother and stepfather, and further

mentioned her mother had hit her with a belt, but stated the

belt did not cause any injuries or marks. In fact, Lisa stated

she had never been physically abused by an adult in her home.

The pediatrician testified she did not have any concern the

child was being abused in her home.

 The pediatrician further testified that Lisa's mother

informed her the child's behavior changed after the time of the

subject incident. Lisa's mother related to the pediatrician

that Lisa became defiant, continued to do well academically.

The doctor commented exposure to domestic violence can cause

behavioral changes, including becoming more defiant.

 Lisa's mother also testified. She stated around Christmas

2012, she consented to defendant taking Lisa to McDonald's for

lunch. The mother recalled they had been gone for a long period

of time and she became worried, but Lisa did come home that

afternoon and reported she had had fun while she was out.

 Months later, the mother received a call from the teacher

assistant; following that call, the mother asked Lisa what she

had reported to the teacher and the teacher assistant. The

child said defendant took her to his mother's house, pulled her

 5
 A-5529-14T4
pants and underwear down, made her lie on the bed, laid on top

of her, and rubbed his penis on her buttocks.

 During cross-examination, defense counsel broached the

subject of domestic violence between the mother and Lisa's step-

father. The State objected, and during a sidebar conference

defense counsel explained she wanted to "infer possible third-

party guilt" by suggesting another in Lisa's home had abused the

child. The court sustained the objection, noting there was no

evidence the step-father or any third party committed the acts

about which Lisa complained.

 The defense attorney then advised the court she wished to

question the mother about hitting the child with a belt, to

suggest the change in the child's demeanor around the time of

the subject incident was the result of her mother's abuse. The

court sustained the State's objection, noting there was no

evidence the mother caused the child to sustain any injury when

she hit Lisa with a belt, not to mention there was no evidence a

female committed the alleged acts of sexual abuse. The court

also expressed concern defense counsel's questions would

necessitate the mother asserting her Fifth Amendment2 rights in

the presence of the jury.

2
 U.S. Const. amend. V.
 6
 A-5529-14T4
 During her summation, defense counsel argued there was

insufficient proof defendant committed the alleged offense, and

emphasized the inconsistencies among the child's reports of the

incident rendered her claim of sexual assault untrustworthy.

 II

 Defendant asserts the following arguments for our

consideration:

 POINT I – THE TRIAL JUDGE IMPROPERLY
 PERMITTED THE FRESH-COMPLAINT WITNESS TO
 TESTIFY AS TO THE DETAILS OF THE ALLEGED
 ASSAULT, PROVIDED THE JURY WITH AN
 UNNECESSARY AND MISLEADING INSTRUCTION ON
 THE TENDER-YEARS HEARSAY EXCEPTION, AND
 PERMITTED THE STATE TO IMPROPERLY BOLSTER
 [THE CHILD'S] CREDIBILITY BY ALLOWING IT TO
 PRESENT NEEDLESSLY CUMULATIVE EVIDENCE OF
 [THE CHILD'S] ALLEGATIONS AGAINST DEFENDANT.
 THE COMBINATION OF THESE ERRORS DEPRIVED
 DEFENDANT OF A FAIR TRIAL.

 A. The Judge Failed To Limit
 [The Teacher Assistant] Fresh-
 Complaint Testimony To General
 Information About [the Child's]
 Complaint To Her.

 B. The Judge Improperly Issued A
 Jury Instruction On Tender-Years
 Testimony That Was Likely To Have
 Misled And Confused The Jury.

 C. In Addition To The Victim's
 Testimony, The Judge Permitted
 Three Hearsay Statements Under The
 Tender-Years Hearsay Exception,
 One Hearsay Statement Under The
 Fresh-Complaint Doctrine, And

 7
 A-5529-14T4
 Testimony About The Reported
 Incident From The Treating Doctor,
 Resulting In Cumulative Evidence
 That Improperly Bolstered The
 Victim's Testimony and Prejudiced
 Defendant.

 POINT II – THE TRIAL COURT VIOLATED
 DEFENDANT'S CONSTITUTIONAL RIGHT TO PRESENT
 A COMPLETE DEFENSE BY PROHIBITING COUNSEL
 FROM ASKING THE VICTIM'S MOTHER ABOUT
 VIOLENCE IN THE HOME, WHICH SERVED AS AN
 ALTERNATIVE EXPLANATION FOR THE VICTIM'S
 PURPORTED BEHAVIORAL CHANGES AFTER THE
 INCIDENT.

 POINT III – THIS CASE SHOULD BE REMANDED FOR
 RESENTENCING BECAUSE THE SENTENCING COURT
 IMPROPERLY WEIGHED THE AGGRAVATING AND
 MITIGATING FACTORS, RESULTING IN AN
 EXCESSIVE SENTENCE.

 A

 We first address defendant's contention the court erred

when it failed to limit the teacher assistant's testimony, which

both parties regarded as fresh complaint testimony. As stated

above, the assistant testified the child informed her that,

after her mother's friend took her to McDonald's, he then took

her to his home. While there, he took off his and her clothes,

and rubbed his body against hers.

 The fresh complaint doctrine is one that "allows the

admission of evidence of a victim's complaint of sexual abuse,

otherwise inadmissible as hearsay, to negate the inference that

 8
 A-5529-14T4
the victim's initial silence or delay indicates that the charge

is fabricated." State v. R.K., 220 N.J. 444, 455 (2015).

However, "[o]nly the facts that are minimally necessary to

identify the subject matter of the complaint should be

admitted." Id. at 456. When admitting fresh complaint

evidence, a trial court should make clear to a jury such

evidence should not be considered to "bolster [a] victim's

credibility or prove the underlying truth of [] sexual assault

charges," but rather used only for the narrow purpose of

"dispel[ing] [a negative] inference [from] the victim['s]"

silence. State v. Bethune, 121 N.J. 137, 148 (1990).

 Defendant contends the teacher assistant's testimony should

have been limited to the fact the child complained to her and

the "general substance of the complaint – that someone

inappropriately touched her." In addition, defendant points out

the court failed to give a limiting instruction at the time of

the assistant's testimony.

 First, the limited details the teacher assistant provided

were not more than necessary to identify the subject matter of

the child's complaint. Although our courts have disallowed

"excessive details," see State v. Bethune, 121 N.J. 137, 147

(1990), "[o]ur courts have been consistent in allowing fresh-

 9
 A-5529-14T4
complaint witnesses to provide enough basic information that the

jury will have a sense of the complaint's context." State v.

R.K., 220 N.J. 444, 459 (2015).

 In State v. Balles, 47 N.J. 331 (1966), the victim's mother

testified the victim had disclosed to her the defendant "put his

hands down her panties and had touched here." Id. at 339. Our

Supreme Court determined the mother's testimony was not improper

under the fresh complaint doctrine, as she did not "elaborate

and could hardly have said less and still identified the nature

of [the victim's] complaint." Ibid.

 Here, as for the illicit act itself, the assistant merely

testified the child said defendant took off her and his clothes,

and rubbed his body against hers. These few details were

necessary to provide the minimal information necessary to enable

the jury to have a "sense of the complaint's context," and were

analogous to those provided by the fresh complaint witness and

found acceptable by the Court in Balles.

 Second, the court did provide the appropriate limiting

instruction in its final charge to the jury, thoroughly

explaining the limited nature of fresh complaint testimony.

There is no requirement such instruction be provided at the time

fresh complaint testimony is admitted. See State v. Hummel, 132

 10
 A-5529-14T4
N.J. Super. 412, 424 (App. Div. 1975). Accordingly, we conclude

there is no merit to defendant's contention the court erred by

allowing the admission of the teacher assistant's testimony and

by failing to provide a limiting instruction at the time such

testimony was provided.

 B

 Defendant next contends the court issued a jury instruction

on tender years testimony that likely misled and confused the

jury. Before trial, the court determined the proffered

testimony of the mother, teacher and detective was admissible

under the tender years exception. Defendant does not challenge

this ruling, or that these witnesses' testimony was substantive

evidence. The defendant complains the final jury instruction on

tender years testimony was given immediately following the

instruction on fresh complaint testimony, and thus may have

confused the jury on how to use these two different kinds of

testimony.

 We have examined the jury charge and find no merit to the

contention the charge was confusing or could have misdirected

the jury on how to consider and apply these two forms of

testimony. The court distinguished fresh complaint from tender

years testimony and clearly instructed the jury how it was to

 11
 A-5529-14T4
consider each kind of testimony. Defendant's remaining

arguments pertaining to the court's instructions on fresh

complaint and tender years testimony are without sufficient

merit to warrant discussion in a written opinion. R. 2:11-

3(e)(2).

 C

 In argument Point I(c), defendant maintains the court erred

by admitting: (1) the teacher assistant's testimony under the

fresh complaint doctrine; (2) the teacher's, detective's, and

mother's testimony under the tender years exception; and (3) the

testimony from Lisa's treating pediatrician. Defendant does not

challenge the fact each witness's testimony was separately

admissible under one rule of law or another. The claimed error

is the testimony from all of these witnesses improperly

bolstered the victim's testimony. That is, collectively, the

admission of these witnesses' testimony had the cumulative

effect of bolstering the victim's testimony and thus prejudiced

him. We disagree.

 First, this particular issue was not raised before the

trial court. Defendant did move before trial to exclude the

testimony of the mother, teacher, and detective under the tender

years exception, but he did not seek the exclusion of such

 12
 A-5529-14T4
testimony under N.J.R.E. 403. Therefore, our review of

defendant's argument is guided by the plain error rule. R.

2:10-2; see also State v. Miraballes, 392 N.J. Super. 342, 360

(App. Div.), certif. denied, 192 N.J. 75 (2007).

 Under the plain error rule, any error will be disregarded

unless "clearly capable of producing an unjust result." State

v. Feaster, 156 N.J. 1, 71 (1998). Reversal based on plain

error requires us to find the error is "sufficient to raise a

reasonable doubt as to whether the error led the jury to a

result it otherwise might not have reached." State v. Williams,

168 N.J. 323, 336 (2001) (quoting State v. Macon, 57 N.J. 325,

336 (1971)). We may also infer from the lack of an objection

defense counsel recognized the alleged error was of no moment or

was a tactical decision to let the error go uncorrected at the

trial. Macon, supra, 57 N.J. at 337.

 Second, the child's report of what occurred varied from one

person to another; thus, collectively, the subject testimony did

not bolster the victim's testimony. In fact, defense counsel

emphasized the inconsistencies in the child's reports in her

cross-examination of some of the witnesses. During counsel's

summation, she highlighted the key differences in the child's

 13
 A-5529-14T4
reports to each adult, arguing the child's inconsistent reports

made her untrustworthy.

 Moreover, significantly, while the jury convicted defendant

of second-degree sexual assault, N.J.S.A. 2C:14-2(b),

specifically, sexual contact, as well as endangering the welfare

of a child, N.J.S.A. 2C:24-4(a), the jury acquitted defendant of

first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1).

The State failed to prove beyond a reasonable doubt defendant

committed an act of sexual penetration upon the child. Clearly,

the jury rejected the child's reports of anal penetration.

Given the inconsistencies in the child's reports as provided

through the subject witnesses' testimony, which defendant deftly

utilized to further his defense – a strategy that succeeded in

the acquittal of the most serious charge -, we cannot conclude

there was plain error in the admission of the testimony about

which defendant complains.

 D

 Defendant contends the court erred by precluding him from

cross-examining the mother on whether the stepfather had been

violent toward her, and on the mother's use of a belt to punish

Lisa. We reject defendant's argument, substantially for the

reasons expressed by the trial court.

 14
 A-5529-14T4
 "The scope of cross-examination is a matter resting in the

broad discretion of the trial court." State v. Martini, 131

N.J. 176, 255 (1993). Accordingly, it is "well settled" that

the "scope of cross-examination is a matter for the control of

the trial court[,] and an appellate court will not interfere

with such control unless clear error and prejudice are shown."

Id. at 263-64 (quoting State v. Murray, 240 N.J. Super. 378, 394

(App. Div. 1990)).

 As observed by the trial court, there was no evidence the

stepfather or any third party committed the acts about which

Lisa complained; therefore, evidence of domestic violence

between the mother and stepfather was irrelevant. Further, to

the extent defendant sought to show witnessing domestic violence

can affect a child's behavior and, thus, the observed change in

Lisa's behavior may not have been caused by his alleged conduct,

defendant effectively cross-examined the pediatrician on the

point domestic violence can make a child defiant.

 As for the mother's use of a belt to discipline the child,

first, there was no evidence the mother committed the acts with

which defendant was charged. Second, there was no expert

testimony to substantiate the use of the belt caused or could

have caused the change in the child's behavior, not to mention

 15
 A-5529-14T4
the child herself said she was not injured as a result of her

mother's use of a belt. Finally, the pediatrician testified she

was not concerned the child was being abused at home.

 Accordingly, we are satisfied the trial court's decision to

limit defendant's cross-examination on these issues did not

prejudice defendant.

 E

 Finally, defendant argues this matter must be remanded for

resentencing because the court improperly weighed the

aggravating and mitigating factors, resulting in an excessive

sentence. We disagree.

 An appellate court reviews a sentence under a deferential

standard. State v. Fuentes, 217 N.J. 57, 70 (2014). Our

"review of sentencing decisions is relatively narrow and is

governed by an abuse of discretion standard." State v.

Blackmon, 202 N.J. 283, 297 (2010). "In conducting the review

of any sentence, appellate courts always consider whether the

trial court has made findings of fact that are grounded in

competent, reasonably credible evidence and whether 'the

factfinder [has] appl[ied] correct legal principles in

exercising its discretion.'" Ibid. (alterations in original)

(quoting State v. Roth, 95 N.J. 334, 363 (1984)).

 16
 A-5529-14T4
 The traditional articulation of this standard limits our

review to situations where application of the facts to the law

has resulted in a clear error of judgment leading to sentences

that "shock the judicial conscience." Roth, supra, 95 N.J. at

364-65. If the sentencing court has not demonstrated a clear

error of judgment or the sentence does not shock the judicial

conscience, appellate courts are not permitted to substitute

their judgment for that of the trial judge. Ibid.

 Here, the trial court found aggravating factors three,

N.J.S.A. 2C:44-1(a)(3) (the risk of re-offending); six, N.J.S.A.

2C:44-1(a)(6) (the extent and seriousness of defendant's prior

record); and nine, N.J.S.A. 2C:44-1(a)(9) (the need to deter

defendant and others from violating the law). The trial court

noted defendant, only age thirty-five at the time of sentencing,

had already been convicted of thirteen indictable and ten

Municipal Court offenses.

 It is evident from the record defendant has previously had

the benefit of probationary sentences, but to no avail. He

reoffended and was subsequently imprisoned, only to reoffend

again. The three aggravating factors found by the court to

exist in this matter are supported by the credible evidence. We

 17
 A-5529-14T4
are unpersuaded that it is either necessary or appropriate for

us to intervene and adjust this sentence.

 To the extent we have not expressly addressed any of

defendant's arguments, it is because we concluded they lacked

sufficient merit to warrant discussion in a written opinion. R.

2:11-3(e)(2).

 Affirmed.

 18
 A-5529-14T4