# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3282-16T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

S.D.,[1]

     Defendant-Appellant.

_____

Argued January 22, 2020 – Decided March 2, 2020

Before Judges Yannotti, Hoffman and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 14-04-0258.

Margaret Ruth McLane, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Margaret Ruth McLane, of counsel and on the briefs).

---

[1] We use initials for the defendant and others to protect the identity of a person found to be a victim of sexual offenses. R. 1:38-(c)(12). All references to "S.D." in the body of this opinion refer to defendant's son, who has the same initials as his father.

Meredith L. Balo, Special Deputy Attorney General/ Acting Assistant Prosecutor, argued the cause for respondent (Lyndsay V. Ruotolo, Acting Union County Prosecutor, attorney; Meredith L. Balo, of counsel and on the brief).

PER CURIAM

A Union County grand jury charged defendant with first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1) (count one); second-degree sexual assault., N.J.S.A. 2C:14-2(b) (count two); second-degree sexual assault, N.J.S.A. 2C:14-2(c)(1) (count three); second-degree sexual assault, N.J.S.A. 2C:14-2(c)(4) (count four); and third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a) (count five).

In July 2016, defendant was tried before a jury, which found defendant not guilty on counts one and two, but guilty on counts three, four, and five. The trial court sentenced defendant to a seven-year term of incarceration, with an eighty-five percent period of parole ineligibility, pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. Defendant appeals from the amended judgment of conviction (JOC), dated April 28, 2017. We affirm defendant's convictions but remand for resentencing on count four.

## I.

Here, the State charged that defendant committed the aforementioned offenses on various dates between December 10, 2008, and December 10, 2013. The alleged victim was S.B. At the time of the trial, S.B. was nineteen years old. S.B. testified that when she was younger, she lived with her mother and her siblings in a residence in Union County. S.B.'s father had been living with the family, but he was deported to England several years earlier.

S.B. stated that defendant's wife is her father's cousin, and defendant lived with his wife and children at a residence "around the corner" from S.B.'s home. S.B. said that from the time she was twelve and until she was sixteen years old, she visited defendant's house several times a week without her parents. She would play with defendant's son S.D., watch television, and do her homework.

S.B. testified that when she was about twelve years old, she was at defendant's house. She was going down the stairs when defendant "stuck his hand in [her] pants and fingered [her]." She said defendant held her with one hand while he used his other hand to touch her vagina. According to S.B., defendant did not say anything but "got aggressive" when she tried to move away from him. She stated that thereafter, defendant touched her in a similar manner about ten or fifteen times.

3

S.B. further testified that in August 2013, she went to defendant's house to ask defendant to give her a ride to the home of her friend, M.T. She stated that while she was in the kitchen, defendant held her and put his hand in her pants. As S.B. was trying to leave, defendant threw her onto a bed, which was in a room near the door. She landed on her back. Defendant pulled her pants down and threw her legs up so that she could not move. She said defendant put "all his weight" upon her and inserted his penis in her buttocks.

S.B. attempted to push defendant off but she hurt herself by trying. She stated the assault continued for "five, ten minutes" before defendant "just stopped" and ejaculated on the floor. Afterwards, S.B. went to use the bathroom. She saw blood in the toilet, which came from her buttocks. She left defendant's house and never returned.

S.B. also testified that on one occasion, she spent the night at defendant's house. She went to sleep on the couch wearing shorts and a shirt. When she woke up, she saw that her shorts had been pulled down. She testified that defendant had his tongue on her vagina and he was licking her clitoris. When she attempted to push defendant off, he "used his head to be aggressive."

S.B. stated that about a month after the incident in August 2013, she told S.D. about "things" that had been happening to her. She did so because that

incident was "over the top," and she was concerned about her baby cousin, who was living with defendant. She thought defendant also might be touching the baby inappropriately. S.B. testified that on October 4, 2013, after speaking with her friend, A.C., she wrote a letter to her mother, informing her of the abuse.

S.B.'s mother, D.B., testified that on October 4, 2013, S.B. contacted her and said she had something important to tell her. When D.B. returned home, S.B. handed her a note stating that defendant had been touching her. S.B. told her the abuse had happened several months earlier. D.B. asked S.B. whether defendant had been touching her with his penis or his hands. S.B. said he was touching her with both. S.B. told D.B. defendant was touching her buttocks, breasts, and "her body[.]"

After S.B. reported the abuse, D.B. took her to a hospital but hospital staff could not examine her to determine if she had been raped because too much time had passed. D.B. stated that after she and S.B. left the hospital, they went to the police station, where S.B. spoke with the investigators and reported the abuse.

The State presented testimony from Dr. Gladibel Medina, who was qualified as an expert in child abuse pediatrics. Dr. Medina testified that she met with S.B. and her mother for "diagnosis and treatment." S.B. told Dr. Medina "an adult male" began touching her when she was twelve years old. S.B.

said the person who did this to her was "the male [who] is the partner of [her] cousin," and she mentioned her cousin's first name.

Dr. Susan Cohen Esquilin testified about Child Sexual Abuse Accommodation Syndrome (CSAAS). Dr. Esquilin stated that CSAAS is a theory, which identifies behaviors often exhibited by child victims of sexual abuse. She explained that these behaviors are secrecy, helplessness, entrapment and accommodation, delayed disclosure, and recantation.

In addition, M.T. testified that during the summer of 2013, S.B. told her she was being "touched" around her vagina and buttocks, and that defendant was the person who was doing this to her. Initially, S.B. did not want to talk about the abuse, but this changed because S.B. was concerned about the safety of a little girl in defendant's home. M.T. stated S.B. told her she also informed S.D. of the abuse, and that S.D. encouraged her not to go to the police because it would ruin his life.

Defendant denied he touched S.B. inappropriately or abused her. He testified that he knew S.B. and her family very well, and they lived near his home. He stated that after S.B.'s father was deported, S.B. spent time at his home, but his relationship with her grew worse. According to defendant, S.B. got annoyed with him because he would give her siblings rides, but he would

6

not give her rides. He was shocked by the allegations that he sexually abused S.B. He denied doing anything inappropriate to S.B.

The jury found defendant not guilty on count one, charging defendant with committing one or more acts of sexual penetration upon S.B., when she was less than thirteen years of age. N.J.S.A. 2C:14-2(a)(1). The jury also found defendant not guilty on count two, which charged defendant with commission of one or more acts of sexual contact upon S.B. when she was less than thirteen years old. N.J.S.A. 2C:14-2(b).

However, the jury found defendant guilty on count three, which charged defendant with committing one or more acts of sexual penetration upon S.B. by using physical force, where the victim did not sustain severe personal injury. N.J.S.A. 2C:14-2(c)(1). The jury also found defendant guilty on count four, which charged defendant with committing one or more acts of sexual penetration upon S.B., when she was at least thirteen years old, but less than sixteen years of age, and defendant was at least four years older. N.J.S.A. 2C:14-2(c)(4).

In addition, the jury also found defendant guilty on count five, in which defendant was charged with endangering the welfare of a child by engaging in sexual conduct that would impair or debauch the morals of the child. N.J.S.A. 2C:24-4(a).

The trial judge sentenced defendant on February 17, 2017, and entered a JOC dated March 1, 2017.  The judge filed an amended JOC on April 28, 2017.  This appeal followed.  On appeal, defendant argues:

> POINT I
> DEFENDANT WAS DENIED THE RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW DUE TO THE ERRONEOUS ADMISSION OF HEARSAY AND CUMULATIVE FRESH COMPLAINT EVIDENCE.
>
> POINT II
> DEFENDANT'S CONVICTIONS MUST BE REVERSED BECAUSE THE JURY INSTRUCTIONS INCORRECTLY FAILED TO SPECIFY THAT THE JURY HAD TO UNANIMOUSLY AGREE ON WHICH INSTANCES OF SEXUAL ASSAULT OCCURRED.
>
> POINT III
> TESTIMONY ABOUT [CSAAS] WAS IRRELEVANT, NOT BASED ON RELIABLE SCIENCE, AND UNDULY PREJUDICIAL.  ITS ADMISSION REQUIRES REVERSAL OF DEFENDANT'S CONVICTIONS.
>
> POINT IV
> DEFENDANT'S SENTENCE IS EXCESSIVE BECAUSE THE COURT ERRONEOUSLY FAILED TO FIND MITIGATING FACTOR [ELEVEN], IMPROPERLY FOUND AGGRAVANTING FACTORS [ONE] AND [NINE], AND FAILED TO ADEQUATELY WEIGH THE AGGRAVATING AND MITIGATING FACTORS.

A-3282-16T4

As noted, defendant argues that the trial judge erred by allowing the State to introduce inadmissible hearsay, which he claims improperly bolstered S.B.'s testimony. In support of this argument, defendant cites Dr. Medina's testimony about statements S.B. made to her implicating defendant, and S.B.'s testimony that she disclosed the assaults to S.D. and her friend, A.C.

We review the trial court's evidentiary rulings for abuse of discretion. State v. Green, 236 N.J. 71, 81 (2018) (citing State v. Rose, 206 N.J. 141, 157 (2011)). We will not set aside a trial court's evidentiary ruling "unless it appears that 'there has been a clear error of judgment.'" State v. Prall, 231 N.J. 567, 580 (2018) (quoting State v. J.A.C. 210 N.J. 281, 295 (2012)).

Furthermore, if there was no objection to the admission of the evidence and the trial court's ruling was erroneous, we must determine if the error was "sufficient to raise a reasonable doubt as to whether [it] led the jury to a result it otherwise might not have reached." State v. Daniels, 182 N.J. 80, 95 (2004) (quoting State v. Macon, 57 N.J. 325, 336 (1971)).

Here, defendant argues that the trial judge erred by allowing the State to introduce inadmissible hearsay. Hearsay is "a statement, other than one made by a declarant while testifying at trial, . . . offered in evidence to prove the truth

of the matter asserted." N.J.R.E. 801(c). Hearsay is inadmissible "except as provided by [the rules of evidence] or by other law." N.J.R.E. 802.

A. Dr. Medina's Testimony.

Dr. Medina testified that she met with S.B. for a sexual-abuse evaluation. According to Dr. Medina, S.B. discussed the incidents of abuse, which S.B. said resulted in the manifestation of certain physical symptoms and emotional struggles. S.B. told the doctor that an adult male began touching her around the time she was twelve years old.

According to Dr. Medina, S.B. was mostly concerned that contact of the man's penis with her anal area might have caused an infectious disease. The assistant prosecutor asked Dr. Medina if S.B. told her "who did this to her?" The doctor replied that S.B. said it was "the partner of her cousin[,]" and S.B. mentioned her cousin's first name.

The judge ruled that Dr. Medina could testify about the statements made to her during the evaluation because the statements were admissible under the hearsay exception in Rule 803(c)(4). N.J.R.E. 803(c)(4). The rule allows the admission of

> [s]tatements made in good faith for purposes of medical diagnosis or treatment which describe medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external

10                                                                                    A-3282-16T4

> source thereof to the extent that the statements are reasonably pertinent to diagnosis or treatment.
>
> [Ibid.]

The judge did not err by admitting statements that S.B. made to the doctor indicating that she had been sexually assaulted, the physical manifestations of the assaults, and her emotional reaction to the abuse. Dr. Medina should not, however, have been permitted to repeat S.B.'s statement about the individual who "did this to her" because that statement was not made "for purposes of medical diagnosis or treatment." R.S. v. Knighton, 125 N.J. 79, 88 (1991); State v. D.R., 109 N.J. 348, 351 (1988).

We note that in her testimony, Dr. Medina did not specifically name defendant as the person whom S.B. said assaulted her. Even so, based on the prior testimony in the case, which detailed S.B.'s relationship to defendant and described his family, it was readily apparent that S.B. was referring to defendant when she told Dr. Medina that the person who assaulted her was "the partner of her cousin."

The State acknowledges that it would have been better if the assistant prosecutor had not asked Dr. Medina if S.B. told her who had "done this to her?" Nevertheless, defense counsel did not object to the question or seek to strike the answer. Moreover, during cross-examination, defense counsel elicited

11

testimony from Dr. Medina confirming that the medical records include a statement by S.B., implicating defendant as the person who assaulted her sexually. We therefore must presume that defense counsel did not believe Dr. Medina's testimony was prejudicial.

Indeed, S.B. had already testified in detail about the sexual abuse and identified defendant as the perpetrator. We are not convinced that Dr. Medina's testimony about S.B.'s identification of the person who abused her was likely to have a significant effect on the jury's assessment of S.B.'s credibility.

We therefore conclude that the admission of Dr. Medina's statement about S.B.'s identification was erroneous. It was not, however, an error "sufficient to raise a reasonable doubt as to whether [it] led the jury to a result it might not otherwise have reached." Daniels, 182 N.J. at 95 (quoting Macon, 57 N.J. at 336).

B. S.B.'s Statements to A.C. and S.D.

Defendant also argues that the judge erred by permitting S.B. to testify about her conversations with S.D. and A.C. He contends S.B.'s testimony about what she said to these individuals was inadmissible hearsay.

S.B. testified that she spoke with A.C. and, as a result of that conversation, she wrote the note to her mother disclosing the abuse. In eliciting this testimony,

12

the assistant prosecutor stated, "So now, without telling us anything that you said to [A.C.] or [A.C.] said to you, did you have a conversation with [A.C.] on October 4th, 2013?"  S.B.'s response did not include inadmissible hearsay.

Furthermore, as we stated previously, S.B. testified that about a month after defendant assaulted her in August 2013, she spoke with S.D. and she told him about the assaults.  S.B.'s statements regarding her conversation with S.D. were not hearsay because they were admissible, not for their truth, but rather to explain why S.B. delayed informing her mother and the police of the assaults.

## III.

Defendant argues that the trial judge erred by admitting what he claims is cumulative fresh complaint evidence.  The fresh complaint doctrine allows the State to admit "evidence of a victim's complaint of sexual abuse, [which is] otherwise inadmissible as hearsay, to negate the inference that the victim's initial silence or delay indicates that the charge is fabricated"  State v. R.K., 220 N.J. 444, 455 (2015) (citing  State v. Hill, 121 N.J. 150, 163 (1990), State v. Balles, 47 N.J. 331, 338 (1966)).  "In order to qualify as fresh-complaint evidence, the victim's statement must have been made spontaneously and voluntarily, within a reasonable time after the alleged assault, to a person the victim would

ordinarily turn for support." Ibid. (citing State v. W.B., 205 N.J. 588, 616 (2011); Hill, 121 N.J. at 163).

"These requirements are relaxed when applied to juvenile victims." Ibid. (citing State v. Bethune, 121 N.J. 137, 143-44 (1990)). "If the trial judge finds that the fresh-complaint criteria has been met, then [the judge] may assess, in light of the rule's narrow purpose of negating inferences that the victim had failed to complain, whether repeated testimony would be irrelevant or prejudicial." Id. at 456-57 (internal quotations omitted).

Here, the trial judge did not mistakenly exercise his discretion by allowing both M.T. and D.B. to testify as fresh complaint witnesses. The testimony of these witnesses met the criteria for admission. M.T. and D.B. testified that S.B. regularly turned to them for support and that S.B. reported the abuse voluntarily. Moreover, S.B. reported the assaults to both M.T. and D.B. within a reasonable time after they occurred.

Furthermore, neither M.T. nor D.B. provided unnecessary facts about the assaults. Each witness provided sufficient information to explain the context of S.B.'s complaint, and neither witness's testimony was "excessively graphic" or more detailed than S.B.'s own testimony. Id. at 459 (holding a fresh complaint

witness's testimony inadmissible because it was "excessively graphic" and went beyond the scope of the victim's testimony).

Defendant argues, however, that the trial judge erred by allowing both M.T. and D.B. to testify as fresh complaint witnesses because not long after S.B. disclosed the abuse to M.T. and D.B., S.B. reported the assaults to the police. Defendant contends that since S.B.'s disclosures to M.T. and D.B. occurred around the time she went to the police, the testimony about the disclosure to M.T. and D.B. did not serve the purpose of fresh complaint evidence. We disagree.

S.B.'s testimony was offered to negate the inference that she was not sexually assaulted because she delayed in disclosing the assaults. The fact that S.B. reported the abuse to the police shortly after reporting the abuse to M.T. and D.B. does not preclude the admission of this evidence. S.B. explained why she had not complained about the assaults earlier. Shortly after S.B. disclosed the abuse to M.T. and D.B., she was taken to the police station, where she reported the abuse. The admission of the fresh complaint evidence was not a mistaken exercise of discretion.

Defendant further argues the trial judge should have only allowed one fresh complaint witness because allowing two improperly bolstered S.B.'s

testimony. The contention lacks sufficient merit to warrant discussion. R. 2:11-3(e)(2). We note, however, that the judge limited the State to presenting two fresh complaining witnesses. Allowing two fresh complaint witnesses did not improperly bolster S.B.'s account. The judge's decision was not "so wide of the mark" as to result in a "manifest denial of justice." State v. Carter, 91 N.J. 86, 106 (1982).

## IV.

Defendant next argues that the trial judge should have given the jury a specific unanimity charge. Defendant did not, however, seek that instruction at trial. Therefore, we must determine whether the judge's failure to give the charge was an error, and if so, whether the error "is of such a nature as to have been clearly capable of producing an unjust result." R. 2:10-2.

Defendant notes that at trial, S.B. testified about three specific instances of sexual assault, which occurred on different dates. After describing one assault, she said defendant touched her in a similar manner ten to fifteen more times. Defendant contends that because there were numerous instances of sexual assault that could have formed the basis for the jury's verdicts on counts three and four, the judge should have instructed the jury it had to agree unanimously on the specific assaults that formed the basis for each conviction.

16

The unanimity principle requires "jurors to be in substantial agreement as to just what a defendant did before determining his guilt or innocence," and the principle is "deeply ingrained in our jurisprudence." State v. Frisby, 174 N.J. 583, 596 (2002). A specific unanimity instruction is not, however, always required. State v. Parker, 124 N.J. 628, 637 (1991).

"The core question is, in light of the allegations made and the statute charged, whether the instructions as a whole [posed] a genuine risk that the jury [would be] confused." Id. at 638. "The reviewing court should examine two factors: whether the acts alleged are conceptually similar or are contradictory or only marginally related to each other, and whether there is a tangible indication of jury confusion." State v. Gandhi, 201 N.J. 161, 163 (1995) (internal quotations omitted).

In Parker, the defendant was a teacher charged with three sexual assaults and official misconduct, based on a series of incidents. Parker, 124 N.J. at 632. The defendant was convicted of official misconduct but acquitted of the sexual assault charges. Ibid. The Court held that a specific unanimity instruction was not required because the alleged acts constituted a "continuing course of conduct" which "formed a core of conceptually similar acts." Id. at 632, 639.

The Court also noted there was no evidence of juror confusion. Id. at 639-40. The Court found that the jury was "conscientious and sophisticated," and noted that the jury "carefully sifted through all the evidence as shown by its unanimous acquittal of defendant on some counts . . . and its unanimous verdict of guilt . . ." on other counts. Id. at 640.

Parker supports the conclusion that a specific unanimity charge was not required in this case. Here, S.B. testified that defendant engaged in a "continuing course of conduct," which consisted of conceptually similar acts of sexual abuse. The allegations were directly related to each other and not contradictory.

Moreover, the jury did not show any signs of confusion. The jury found defendant not guilty of the first two counts of the indictment, indicating that it understood the differences between the offenses and the acts defendant was charged with committing. As in Parker, the jury was "sophisticated and conscientious" in reviewing all the evidence and returning its verdicts. Ibid.

V.

Defendant further argues that the admission of expert testimony regarding CSAAS requires reversal of his convictions. We note that in State v. J.Q., 130

N.J. 554, 556 (1993), the Court held that expert CSAAS testimony was sufficiently reliable to be admitted into evidence.

However, while this appeal was pending, the Court decided State v. J.L.G., 234 N.J. 265 (2018). The Court found that except for testimony about delayed disclosure, "it is no longer possible to conclude that CSAAS has a sufficiently reliable basis in science to be the subject of expert testimony." Id. at 272. The Court held that

> expert testimony about CSAAS in general, and its component behaviors other than delayed disclosure, may no longer be admitted in criminal trials. Evidence about delayed disclosure can be presented if it satisfied all parts of the applicable evidence rule. See N.J.R.E. 702. In particular, the State must show that the evidence is beyond the understanding of the average jury.
>
> [Ibid. (Emphasis added).]

The Court stated that if testimony on delayed disclosure is admitted, the trial judge must provide "appropriate limiting instructions to the jury – both before an expert witness testifies and as part of the court's final charge." Ibid. The Court requested "the Committee on Model Criminal Jury Charges to draft appropriate instructions limited to delayed disclosure as soon as practicable." Ibid.

19

Thereafter, a panel of our court issued its opinion in State v. G.E.P., 458 N.J. Super. 436 (App. Div.), certif. granted, 239 N.J. 598 (2019). In G.E.P., the panel held that that J.L.G. announced a new rule of law, which should be applied retroactively to cases in the "pipeline" when J.L.G. was decided. Id. at 443. The term "pipeline retroactivity" means that a new rule of law will be applied to "all future cases, the case in which the rule is announced, and any cases still on direct appeal." State v. Knight, 145 N.J. 233, 249 (1996).

On appeal, defendant argues that we should follow G.E.P. and accord pipeline retroactively to J.L.G. He notes that under J.L.G., the only permissible CSAAS testimony is testimony pertaining to delayed disclosure, but he argues that Dr. Esquilin's testimony in this regard did not meet the requirements of Rule 702. He asserts that the admission of testimony on all of the constituent behaviors of CSAAS requires reversal of his convictions.

We note that in its recent decision in State v. Covil, the Court observed that when it announces a new rule and uses the phrase "going forward," the rule is only applied to the case in which the rule is announced and future cases. ___ N.J. at ___ (slip op. at 27). In J.L.G., the Court did not use the phrase "going forward" but stated that except for delayed disclosure, experts "may not present evidence"

on CSAAS as a whole or the four other CSAAS behaviors. 234 N.J. at 303 (emphasis added).

The Court's discussion in J.L.G. of the new rule for admission of CSAAS testimony looks to the future, not the past. Moreover, it appears that by asking the Committee to draft new instructions promptly, the Court intended that its decision would be applied in that case before it and to future cases. In any event, we need not decide whether J.L.G. should be applied retroactively. We are convinced that if J.L.G., is accorded pipeline retroactivity, reversal of defendant's convictions is not warranted.

Here, Dr. Esquilin testified that children who have been sexually assaulted may engage in the behaviors encompassed in CSAAS, specifically secrecy, helplessness, entrapment and accommodation, delayed disclosure, as well as recantation and false denials. On cross-examination, the doctor acknowledged, however, that she did not evaluate S.B. or review the discovery in this case. Dr. Esquilin also acknowledged that CSAAS is not a diagnostic tool and cannot be used to determine if sexual abuse occurred.

In our view, Dr. Esquilin's testimony about delayed disclosure met the criteria for admission under Rule 702. As noted, S.B. explained the reasons for her delay in reporting the abuse. Dr. Esquilin testified that empirical research

shows that sexually abused children often wait long periods, "sometimes lifetimes," to disclose the abuse. The average juror would not be expected to have any understanding of the such research. Thus, this testimony was "beyond the ken of the average juror." J.L.G., 234 N.J. at 304 (citing State v. Kelly, 97 N.J. 178, 208 (1984)).

However, even if the admission of Dr. Esquilin's CSAAS testimony on delayed disclosure and the other CSAAS behaviors was erroneous, the error was not "'sufficient to raise a reasonable doubt' that 'the error led the jury to a result it otherwise might not have reached.'" J.L.G., 234 N.J. at 306 (quoting Macon, 57 N.J. at 335-36). S.B. testified at trial. The jury was able to assess her credibility.

In doing so, the jury was able to consider S.B.'s demeanor, her description of the abuse, her explanation for her delayed disclosure, her fresh complaints to M.T. and A.C., the reasons she informed her mother of the abuse, and her statements to Dr. Medina during the doctor's evaluation. The jury could also consider the credibility of defendant's testimony, in which he denied committed the charged offenses.

Moreover, and most important, the trial judge instructed the jury in accordance with the model charge regarding CSAAS testimony, which strictly

limits the jury's consideration of such testimony. <u>Model Jury Charges (Criminal)</u>, "Child Sexual Abuse Accommodation Syndrome" (rev. May 16, 2011). The judge told the jury it could not consider the CSAAS testimony as proof that the sexual abuse occurred in this case. The judge stated that the CSAAS testimony could only be considered to explain certain behaviors of alleged victims of child sexual abuse.

The judge emphasized that the CSAAS testimony could not be considered as in any way proving that defendant committed, or did not commit, any particular act of abuse. We must presume the jury followed the judge's instructions. <u>State v. Morgan</u>, 217 N.J. 1, 16 (2013) (citing <u>State v. Burns</u>, 192 N.J. 312, 335 (2007)).

We reject defendant's contention that the admission of the CSAAS testimony improperly bolstered S.B.'s testimony or nullified any attempt by the defense to challenge S.B.'s credibility. Dr. Esquilin did not offer an opinion as to whether S.B. exhibited any of the behaviors associated with CSAAS, and she never opined as to whether S.B. was truthful.

Defense counsel had the opportunity to cross-examine S.B. and the other witnesses for the State. Defendant's attorney asked only five questions in cross-examining Dr. Esquilin, which suggests that counsel did not view the testimony

23

as consequential. In addition, neither the assistant prosecutor nor defense counsel mentioned the CSAAS testimony in their summations.

We are therefore convinced that if the admission of the CSAAS testimony in this case was erroneous, the error was harmless. We conclude that any such error was not an error "of such a nature as to have been clearly capable of producing an unjust result." R. 2:10-2.

## VI.

Defendant further argues that his sentence is excessive. He contends the judge erred by failing to find a mitigating factor, improperly found two mitigating factors, and did not properly weigh the aggravating and mitigating factors.

"An appellate court's review of a sentencing court's imposition of sentence is guided by an abuse of discretion standard." State v. Jones, 232 N.J. 308, 318 (2018). In reviewing a sentence, the court must determine whether: "(1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were . . . 'based upon competent credible evidence in the record;' [and] (3) 'the application of the guidelines to the facts' of the case 'shock[s] the judicial conscience.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (third alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

"An appellate court is bound to affirm a sentence, even if it would have arrived at a different result, as long as the trial court properly identifies and balances aggravating and mitigating factors that are supported by competent credible evidence in the record." State v. O'Donnell, 117 N.J. 210, 215 (1989) (citing State v. Jarbath, 114 N.J. 394, 400-01 (1989); Roth, 95 N.J. at 364-65).

Here, the judge found aggravating factors three and nine. N.J.S.A. 2C:44-1(a)(3) (risk that defendant will commit another offense), (9) (need to deter defendant and others from violating the law). The judge also found mitigating factor seven, N.J.S.A. 2C:44-1(a)(7) (defendant has no prior history of delinquency or criminal activity). The court found that the aggravating factors outweighed the one mitigating factor.

The judge sentenced defendant on count three to seven years of incarceration and required that defendant serve eighty-five percent of the sentence before becoming eligible for parole, pursuant to NERA. The judge merged count five with count four and sentenced defendant on count four to a concurrent seven-year prison term, also with an eighty-five percent period of parole ineligibility, pursuant to NERA. In addition, the judge sentenced defendant to three years of parole supervision and imposed appropriate fees and penalties.

On appeal, defendant argues that the judge erred by finding aggravating factor one. N.J.S.A. 2C:44-1(a)(1) ("nature and circumstances of the offense and the role of the actor herein, including whether or not it was committed in an especially heinous, cruel or depraved manner"). At sentencing, the judge stated he was finding aggravating factor one based on "the age of the victim at the time of the first offense and the relationship between the victim and the defendant." We note that the amended JOC does not state that the judge found aggravating factor one.

Age was not an element of the offenses charged in count three, therefore the judge's consideration of the victim's age for purposes of sentencing defendant on count three was permissible. See State v. Pineda, 119 N.J. 621, 627 (1990) (holding that a court may not consider elements of an offense as an aggravating factor); State v. Hodge, 207 N.J. Super. 363, 367 (App. Div. 1986) (age of victim and finding that the victim's relationship to defendant cannot be considered an aggravating factor if they are elements of the charged offense).

Furthermore, the judge did not err by considering defendant's family relationship with S.B. for purposes of sentencing defendant on both counts three and four because "[c]rime within the family is one of the most deeply troubling aspects of contemporary life." State v. Hodge, 95 N.J. 369, 377 (1984).

However, because age was an element of the offense charged in count four, the judge erred by considering S.B.'s age in sentencing defendant on that count. We remand the matter for resentencing on count four.

We reject defendant's contention that the judge erred by finding aggravating factor nine because the judge stated that he finds specific deterrence in every case. Defendant contends the judge violated the sentencing guidelines because he is entitled to individualized consideration when sentenced. We are convinced, however, that the record supports the judge's determination that there is need to deter defendant and others from engaging in the sort of egregious conduct for which he was found guilty.

We also find no merit in defendant's contention that the judge erred by failing to find mitigating factor eleven. N.J.S.A. 2C:44-1(b)(11) (incarceration of defendant "would entail excessive hardship to" defendant "or his dependents"). Defendant argues the judge failed to explain why he refused to find this factor. Defendant asserts that he has two children. At the time of sentencing, one of defendant's children was about to graduate high school and the other child was six years old.

However, at sentencing, defendant's counsel merely stated that defendant is "a family man," who was married with two children. Defendant failed to

establish that his incarceration would entail "excessive" hardship to his family. He did not show the hardship his children would suffer would be greater than the hardship suffered by the children of other incarcerated persons. State v. Locane, 454 N.J. Super. 98, 129-30 (App. Div.), certif. denied, 235 N.J. 457 (2018).

Accordingly, we affirm defendant's convictions and the sentence on count three, but remand for resentencing on count four. On remand, the judge also should amend the JOC to reflect his findings of aggravating factors for the sentence on count three. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION